## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

MARCUS F. REESE,
a/k/a MARCUS F. TOLER,

      Petitioner,

v.                                             Case No.  3:18-cv-460-MCR-MJF

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Petitioner Marcus F. Reese, also known as Marcus F. Toler, has filed a petition for writ of habeas corpus and supporting memorandum under 28 U.S.C. § 2254. (Docs. 1, 2). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 16). Reese replied. (Doc. 20). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter and that Reese is not entitled to habeas relief.[1]

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background and Procedural History[2]

At approximately 11:45 p.m. on March 4, 2014, Reese attacked 76-year old Ben Stallworth in Stallworth's home. Stallworth was in his living room when Reese entered his home and struck Stallworth's head with a brick. Reese then struggled with Stallworth over an object in Stallworth's hands. Stallworth yelled to his son, Terrell, for help. Terrell entered the living room to find Stallworth lying on the couch and Reese standing over him trying to wrestle an object from him. Terrell attempted to ward off Reese's attack with a stick. Reese then yanked the object from Stallworth's grasp and fled. Emergency medical personnel arrived to find Stallworth sitting on the couch with his head bleeding profusely. Stallworth lost consciousness and was transported to the hospital where he died within the hour. Reese left his fingerprint on the inside glass of Stallworth's front door. Terrell identified Reese as Stallworth's attacker from a photographic lineup. Terrell was "100% sure" of his identification.

In Escambia County Circuit Court Case No. 2014-CF-960, Reese was charged with Second Degree Murder with a Weapon (Count 1) and Aggravated Battery Upon a Person 65 Years of Age or Older with Great Bodily Harm or with a Deadly Weapon

---

[2] The facts are drawn from the probable cause affidavit that formed the factual basis for Reese's *nolo contendere* plea to the charge of second degree murder. (Doc. 16, Attach. 1, Ex. A at 3-6). Reese stipulated to these facts. (*Id*. at 35, 63-66).

(Count 2). (Doc. 16, Attach. 1, Ex. A at 1–2).[3] During the discovery process, the State disclosed the medical examiner's autopsy report prepared by Dr. Andrea Minyard. Defense counsel deposed Dr. Minyard. (Attach. 3, Ex. H at 95-110). Dr. Minyard testified at deposition that Stallworth had heart disease which "would have killed him" eventually. (*Id*. at 100-02). Dr. Minyard opined that the cause of Stallworth's death was cardiac arrhythmia due to heart disease, with the stress from Reese's assault and the ensuing struggle constituting a contributing cause. (*Id*. at 102). Dr. Minyard also testified that the interval of time between Reese's assault and Stallworth's heart attack was within the time period that such an assault could cause such an attack in someone who had pre-existing heart disease and was subject to a heart attack at any time. (*Id*.). Thus, in Dr. Minyard's opinion, Reese's assault caused Stallworth to suffer a fatal heart attack sooner than he otherwise would have. (*Id*.).

Jury selection was scheduled to begin July 13, 2015. That morning, Reese and the State reached a counseled, negotiated plea agreement. The plea agreement was reduced to writing on a form titled "Sentence Recommendation." (Attach. 1, Ex. A at 63-67). In the plea agreement, Reese confirmed by his signature that he read the

---

[3] Citations to the state court record are to the electronically filed exhibits attached to the State's answer. (Doc. 16). The citation refers to the electronic attachment number followed by the lettered exhibit. If a page of an exhibit bears more than one page number, the court cites the Bates stamp number appearing at the bottom center of the page.

charging document and that he understood the charges. The plea agreement stated that Reese was entering a "straight up" plea of *nolo contendere* to the charge of Second Degree Murder with a Weapon; that the maximum possible penalty for that offense was life in prison; and that the State agreed to a sentence cap of 30 years of imprisonment. (*Id*. at 63). The plea agreement incorporated by reference the probable cause affidavit, which was part of the court file, as the factual basis for the plea. (*Id*.). Reese and the State stipulated to those facts. (*Id*.).

Additionally, Reese certified in the plea agreement: "I have reviewed the facts of my case(s) with my attorney and I agree and stipulate there are sufficient facts available to the State to justify my plea of guilty or nolo contendere to the charge(s)." (*Id*. at 64). Reese also confirmed, by his signature on the agreement, that he reviewed the facts of his case with his attorney and was satisfied with her advice and services. (*Id*.). Reese certified that he understood he was waiving a number of specified rights, including his right to a jury trial; the right to compel the attendance of, and to cross-examine witnesses; the right to present any and all defenses he may have; and the right to appeal. (*Id*.). He confirmed that he was entering his *nolo contendere* plea voluntarily and not due to any threats, coercion, or promises (other than the sentence cap). (*Id*.).

The trial court conducted a plea hearing the same day Reese signed his plea agreement. At the hearing, and immediately prior to the trial court's conducting the

colloquy, the court announced that Reese's sentencing scoresheet indicated 15.7 years of imprisonment as the lowest permissible sentence and a maximum sentence of imprisonment for life. (Attach. 1, Ex. A at 31). Defense Attorney Cobb stated that the defense had no objection to the scoresheet. (*Id.*). Reese was sworn, and the trial court announced that the plea agreement provided that Reese would plead *nolo contendere* as charged; that there was no agreement with the State as to Reese's sentence except that the sentence would not exceed 30 years of imprisonment; and that the court would hold a sentencing hearing at which the State and Reese could present evidence. (*Id.* at 32). The court asked Reese if that was his understanding of the plea agreement, and Reese responded yes. (*Id.*). The court asked Reese if he read the written plea agreement before he signed it, and Reese confirmed that he had. (*Id.* at 34). The court asked Reese if he understood he was giving up certain rights (specifically, the right to a trial, the right to remain silent, the right to have a jury decide his case, the right to confront witnesses, and the right to appeal), and Reese responded yes. (*Id.*).

The court asked Reese if anyone promised him anything that was not included in the written agreement to persuade him to enter the agreement, or if anyone threatened him in any way to induce him to enter the agreement. (*Id.* at 35). Reese responded "no" to both questions. (*Id.*). The court asked Reese if he was satisfied with the advice he received from Attorney Cobb, and if he was satisfied that she

devoted enough time and attention to his case to give him adequate advice. (*Id.*). Reese responded "yes." (*Id.*). The court asked Reese if he had taken any medication in the past 24 hours that may cloud his judgment, and Reese responded "no." (*Id.*). After confirming the stipulated factual basis for the plea, the trial court accepted Reese's plea. (*Id*. at 35-36). The State "nolle prossed" the aggravated battery charge. (*Id*. at 36). The court announced that it would recess and reconvene a few hours later to take evidence from the victim's family relevant to sentencing. (*Id.* at 35–36).

After the recess, defense counsel announced that Reese wished to address the victim's family members who were present at the hearing. (*Id*. at 36). Reese was placed under oath. (*Id.* at 37). Reese asked the victim's family for forgiveness and understanding. (*Id.*). Reese acknowledged that at the time of the offense he was a drug addict. (*Id.*). He then admitted responsibility for Stallworth's death. (*Id.*). After taking testimony from the victim's family, the court continued Reese's sentencing to July 31, 2015. (*Id.* at 36-52).

Prior to sentencing, Reese moved to withdraw his *nolo contendere* plea on the ground that he "mistakenly believed that he would be sentenced to the lowest permissible sentence listed on his score sheet," which was 15.7 years of imprisonment. (Attach. 1, Ex. A at 92). Reese also alleged that he "felt undue pressure and time constraints in trying to determine whether or not to accept the plea agreement." (*Id*.). The trial court held a hearing on July 22, 2015, appointed conflict-

free counsel to represent Reese, and scheduled an evidentiary hearing for August 14, 2015. (*Id.* at 71–91 (hearing transcript)). At the evidentiary hearing, the court heard testimony from Reese and Attorney Cobb, and denied Reese's motion to withdraw his *nolo contendere* plea. (*Id.* at 96–138). The court set a sentencing hearing for September 25, 2015. (*Id.*). On September 25, 2015, the court sentenced Reese to 30 years of imprisonment, with presentence jail credit of 571 days. (*Id.* at 147–62 (sentencing transcript), 165–71 (judgment)). The Florida First District Court of Appeal ("First DCA"), affirmed on June 28, 2016, *per curiam* and without written opinion. *Toler v. State*, 192 So. 3d 476 (Fla. 1st DCA 2016) (Table) (copy at Attach. 2, Ex. D).[4]

On January 5, 2017, Reese filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, asserting three claims. (Attach. 2, Ex. H at 9–25). The circuit court denied relief by written order on January 17, 2017. (*Id.* at 27-37). Reese did not file a timely notice of appeal, but on March 29, 2017, he filed a petition for belated appeal in the First DCA. (Attach. 3, Ex. I). The First DCA granted the petition. *Toler v. State*, 219 So. 3d 1025 (Fla. 1st DCA 2017)

---

[4] While Reese's direct appeal was pending, he filed a *pro se* "Motion to Correct or Change His Sentence Due to a Void Conviction and Sentence in Bar of Former Jeopardy Lacking Exclusive Subject Matter Jurisdiction" in the trial court. (Doc. 16, Attach. 2, Ex. F). The trial court struck the motion as a nullity, because Reese was represented by counsel when he filed it. (Doc. 16, Attach. 2, Ex. G).

(Mem) (copy at Attach. 3, Ex. J). The First DCA affirmed the denial of postconviction relief, *per curiam* and without written opinion. *Toler v. State*, 237 So. 3d 951 (Fla. 1st DCA 2017) (Table) (copy at Attach. 4, Ex. N). The mandate issued January 4, 2018. (Attach. 4, Ex. O).

On December 14, 2017, Reese filed a *pro se* motion for DNA testing under Florida Rule of Criminal Procedure 3.853. (Attach. 4, Ex. P). The motion was denied on April 17, 2018. (Attach. 4, Ex. Q).

Reese filed his *pro se* federal habeas petition on March 20, 2018, raising four claims. (Doc. 1). The State asserts that Reese is not entitled to habeas relief because he procedurally defaulted Ground One and a sub-claim of Ground Four, and his remaining claims fail to meet § 2254(d)'s demanding standard. (Doc. 16).

## II.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court". 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

---

[5] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter,

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

---

Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was

Page 10 of 49

incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.   Discussion

<u>**Ground One**</u>      **"Trial court denied Petitioner a right to due process of law when it denied Petitioner to [sic] withdraw his plea of no contest before sentencing." (Doc. 1 at 3).**

Reese claims that the trial court denied him due process when it denied his request to withdraw his plea based on his alleged misunderstanding of the sentence he would receive. (Doc. 1 at 3; Doc. 2 at 2–3). In support, Reese asserts that he satisfied Florida's "good cause" standard for plea withdrawal set forth in Florida Rule of Criminal Procedure 3.170(f), and that having met that standard, the trial court was required by Rule 3.170 to grant his request. (*Id*.). Reese alleges that he presented this claim to the state court in his direct appeal. (Doc 1 at 3; Doc. 2 at 2).

The State asserts a procedural default defense. (Doc. 16 at 18-19). The State argues that although Reese's direct appeal challenged the trial court's denial of his motion to withdraw his plea, Reese raised the issue as a purely state law question and not as a federal constitutional violation. Reese's failure to "fairly present" the

state court with the federal constitutional nature of his claim renders it procedurally defaulted.

### A.   Exhaustion and Procedural Default

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277–78.

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270–71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'") (quoting *Kelley*, 377 F.3d at 1344– 45). Courts apply "fair presentation" principles "with common sense and in light of the purpose underlying the exhaustion requirement—namely, giving the state courts

'a meaningful opportunity' to address the federal claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)).

"[A] petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015). A petitioner does so, for example, by "including in his claim before the state appellate court the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Lucas*, 682 F.3d at 1351 (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)); *see also Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (concluding that petitioner's federal claims were "fairly presented" when he provided enough information about the claims (and citations to Supreme Court cases) to notify the state court that the challenges were being made on both state and federal grounds).

A petitioner does not satisfy the exhaustion requirement "merely by presenting the state court with 'all the facts necessary to support the claim,' or by making a 'somewhat similar state-law claim.'" *Lucas*, 682 F.3d at 1352 (quoting *Kelley*, 377 F.3d at 1343–44). Similarly, "a petitioner cannot 'scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.

Page 14 of 49

Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *French*, 790 F.3d at 1271 (quoting *Kelley*, 377 F.3d at 1345).

A claim that was not exhausted in state court and which no longer can be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839–40, 848; *Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

### B.    Reese's Due Process Claim is Procedurally Defaulted

Although it is difficult to "pinpoint the minimum requirements that a habeas petitioner must meet in order to exhaust his remedies," *McNair*, 416 F.3d at 1302, it is clear that Reese's counseled direct appeal brief did not alert the state court to a federal constitutional claim. Reese listed the issue presented for review as: "The trial judge erred by denying Mr. Toler's motion to withdraw his plea of no contest before sentencing." (Attach. 1, Ex. B at i). Reese summarized his claim as follows:

> This appeal raises one legal issue. The trial court erred in denying Mr. Toler's motion to withdraw his plea of no contest. Mr. Toler's plea was based on his misunderstanding of the plea agreement, and he filed a motion to withdraw the plea as soon as he became aware of the misunderstanding, which was prior to sentencing. Thus, Mr. Toler

established good cause for the trial court to allow him to withdraw his
plea.

(*Id*. at 8).

The body of Reese's argument relied exclusively on state law. (*Id*. at ii, 9–
13). Reese identified the relevant legal standard as the "good cause" standard
established in Florida Rule 3.170, which provides: "The court may in its discretion,
and shall on good cause, at any time before a sentence, permit a plea of guilty or no
contest to be withdrawn." Fla. R. Crim. 3.170(f). In arguing that he satisfied this
standard, Reese relied on Florida's definition of "good cause." (Ex. B at 9–11
(discussing *Nicol v. State*, 892 So. 2d 1169, 1171 (Fla. 5th DCA 2005), and *Gray v.
State*, 754 So. 2d 107, 109 (Fla. 4th DCA 2000))).

Reese's appellate brief did not mention any provision of the United States
Constitution, did not identify the federal due process standard for guilty pleas, and
did not cite a single federal case. Reese, therefore, did not fairly present the state
court with a federal constitutional claim. *See, e.g., French*, 790 F.3d at 1270–71
(holding that habeas petitioner did not fairly present his claims that the trial court's
exclusion of evidence violated his rights under the Confrontation Clause of the Sixth
Amendment, when his state court appellate brief presented the issue as a purely state-
law claim); *McNair*, 416 F.3d at 1301 (holding that habeas petitioner did not fairly
present his claim that his federal constitutional rights were violated when the jury

improperly considered extraneous evidence during deliberations, when his state court appellate brief couched the claim in terms of state law). Accordingly, Reese's present claim that his *nolo contendere* plea violates his federal right to due process was not exhausted in his direct appeal, and it is now procedurally defaulted.

Reese's reply argues that this court should excuse his procedural default because he did not have counsel in his Rule 3.850 proceeding or postconviction appeal. (Doc. 20 at 16–18). He cites *Martinez v. Ryan*, 566 U.S. 1 (2012), *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Buck v. Davis*, 137 S. Ct. 759 (2017), to support his argument. (*Id.*).

The problem for Reese is that *Martinez* and its progeny (including *Trevino* and *Buck*) provides an exception for procedurally defaulted claims of *ineffective assistance of trial counsel*, under certain circumstances. *Martinez*, 566 U.S. at 17; *Trevino*, 569 U.S. at 429; *Buck*, 137 S. Ct. at 771. Reese's claim is not an ineffective assistance of counsel claim—it is a due process claim. Therefore, *Martinez* does not apply.[6] *Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d 940, 943 (11th Cir. 2014) (holding that the equitable rule in *Martinez* "applies only to the issue of cause to excuse the procedural default of an ineffective assistance of trial counsel claim that occurred in a state collateral proceeding."). Reese makes none of the requisite

---

[6] There are additional reasons that *Martinez* is inapplicable to this case which are not discussed in this report and recommendation.

showings to excuse his procedural default. Reese's procedural default bars federal habeas review of Ground One.

Furthermore, even if Reese had fairly presented the state courts with a federal due process claim, he would not be entitled to habeas relief. The state courts' rejection of Reese's claim was based on a reasonable determination of the facts. (*See* Attach. 1, Ex. A at 96-137 (transcript of evidentiary hearing on motion to withdraw plea, including trial court's reasoning at 133-36); Ex. A at 29-35 (transcript of Reese's plea hearing); Ex. A at 63-66 (Reese's plea agreement)). On these facts, fairminded jurists could concur in the conclusion that Reese's plea satisfied the federal due process standard. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (summarizing the federal due process standard as "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."). Reese is not entitled to habeas relief on Ground One.

<table>
<tr><td><u>Ground Two</u></td><td><b><u>"Petitioner asserted that he was rendered [sic] ineffective assistance of counsel when counsel of record failed or neglected to file a motion to dismiss the charge of second degree murder when she learned that the victim cause [sic] of death was a heart attack thereby denying Petitioner the right to due process of law and a right to a fair and impartial trial in violation of the 5th/6th [sic] and 14th amendment [sic] rights of the United States and article 1 § 9 of the Florida Constitution." (Doc. 1 at 3).</u></b></td></tr>
</table>

Reese alleges that the medical examiner (Dr. Minyard) stated in her report that the cause of Stallworth's death was a heart attack, and that the laceration caused by Reese striking Stallworth's head with a brick was a survivable injury. (Doc. 1 at 3–4; Doc. 2 at 4–5). Reese claims that Attorney Cobb should have moved to dismiss the charge, pursuant to Rule 3.190(c)(4) of the Florida Rules of Criminal Procedure, on the ground that there was no dispute that the cause of Stallworth' death was a heart attack and not Reese's attack of Stallworth. (*Id.*).

The parties agree that Reese presented this claim to the state courts in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Reese briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 4; Doc. 16 at 21). The State asserts that Reese is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 16 at 21–28).

### A.    Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694). The two-part test articulated in *Strickland*, applies to claims that counsel was ineffective during the plea process. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (applying *Strickland*'s two-part test to habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Missouri v. Frye*, 566 U.S. 134, 140, 147–151 (2012) (applying *Strickland*'s two-part test to habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

In the context of a challenge to a guilty or *nolo contendere* plea, *Strickland*'s prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. The defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Premo v. Moore*, 562 U.S. 115, 129 (2011).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are

mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## B.    Section 2254 Review of State Court's Decision

Reese presented this claim to the state courts as Ground One of his Rule 3.850 motion. The state circuit court rejected the claim for these reasons:

<u>Background</u>

> The Defendant was charged with second degree murder with a weapon and aggravated battery upon a person 65 years of age or older with great bodily harm or with a deadly weapon. <u>Attachment 1</u>. The prosecution was resolved by a negotiated plea agreement with the State. <u>Attachments 2 and 3</u>. The Defendant agreed to plead nolo contendere to second degree murder and the State agreed to sentencing cap of no more than 30 years in state prison. <u>Id.</u> The State also dropped the aggravated battery charge as part of the plea agreement, but the record indicates that the State intended to drop this charge even if the case

proceeded to trial.[FN 1] Attachment 5, at 11, lines 22–25. The actual benefit of the plea agreement for the Defendant was the sentencing cap of 30 years in state prison, as opposed to a potential life sentence, and a reduced lowest permissible sentence due to a reduction in sentencing points. Attachment 5, at 11, 31–32.

> [FN 1: In any event, it appears the Defendant could not have been legally convicted of both crimes. See Campbell-Eley v. State, 718 So. 2d 327 (Fla. 4th DCA 1998) (holding dual convictions for both second degree murder and aggravated battery on a pregnant woman violated double jeopardy).

The Defendant's written plea agreement reflects that the Defendant waived the "right to present any and all defenses I may have." Attachment 2. Prior to accepting the Defendant's plea, the Court asked the Defendant, under oath, "did you read the rights waiver form before you signed it?" The Defendant answered, "Yes, sir." Attachment 3, at 6. The Court asked the Defendant if he understood the rights he was giving up, including "the right to a trial, the right to remain silent, the right to have a jury decide your case, the right to confront witnesses and the right to appeal?" The Defendant answered, "Yes, sir." Id.

The Defendant swore he was satisfied with the advice he had received from his attorney. Attachment 3, at 7. Specifically, the Defendant was asked, "Are you satisfied that she has done enough work on this and put enough time into it to give you adequate advice?" The Defendant answered, "Yes." Id.

Defendant's counsel stipulated there was a factual basis for the plea. Id. Furthermore, the Defendant's written plea agreement specifies, "State and Defense stipulate to the factual basis as noted in the probable cause affidavit contained with the Court's records." Attachment 2.

The probable cause affidavit, part of the arrest report filed in this case, reflects that law enforcement officers were called to a residence in response to a disturbance call. Upon arriving at the residence, law enforcement encountered the victim, Ben Stallworth, on a couch. The

victim had a "laceration to the back of his head, which was bleeding profusely." The victim lost consciousness. <u>Attachment 9</u>.

The victim's son explained that the victim had yelled for help in the living room. When the victim's son arrived he saw his father in a struggle with a man later identified as the Defendant. The Defendant yanked something from the victim's hands and left. <u>Attachment 9</u>.

Next to the couch where the victim was seen by law enforcement, a brick tied up in a tee shirt was found. The victim's son stated that the brick and shirt did not belong to him or his father. The victim's son identified the Defendant as the assailant from a photo line-up. Furthermore, the Defendant's fingerprint was found on a glass door to the victim's residence. Another witness placed the Defendant in the area on the day of the crime. <u>Attachment 9</u>.

Although the victim was alive when law enforcement arrived on the scene, the victim did not survive the attack. <u>Attachment 9</u>. Dr. Andrea Minyard performed an autopsy on the victim. Dr. Minyard was deposed by defense counsel and a copy of this deposition is part of the Court file. <u>Attachment 7</u>. Dr. Minyard testified that the wound on the victim's head was "consistent with a brick with a cloth over it." <u>Attachment 7</u>, at 10. Dr. Minyard concluded, "the main cause of death was the heart disease, but I believe the temporal relationship with the injury to the head is probably what kind of tipped him over." <u>Id.</u>, at 8. Dr. Minyard explained, that the victim "with his bad heart in his relatively poor health, was stressed out to the point where he probably had an arrhythmia of his heart." <u>Id.</u>, at 13. "If you don't get it reset right then and there, well, it's only a matter of minutes that he will pass . . . ." <u>Attachment 7</u>, at 14. Dr. Minyard noted that emergency personnel "were trying to get his heart reset, but apparently it was just too late." <u>Id.</u>, at 15. When the Defendant entered his plea, he testified, "I don't want you to feel like it was something that was planned . . . ." The Defendant said there were "a lot of different things I could blame it on, but, first of all, I have to take the responsibility upon myself and put everything else to the side and just man-up and put it on myself . . . ." <u>Attachment 3</u>, at 10.

. . . .

<u>Claims of Ineffective Assistance of Counsel</u>

As the United States Supreme Court has explained, "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). In general, to state a facially sufficient claim of prejudice, a defendant seeking to withdraw his plea on grounds of counsel's ineffectiveness must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985); Lara v. State, 170 So. 3d 133 (Fla. 5th DCA 2015).

Ground One

The Defendant contends his counsel was ineffective for failing to file a motion to dismiss the charge of second degree murder. The record conclusively demonstrates that the Defendant is not entitled to relief on this claim.

Motions to dismiss criminal charges are treated like summary judgment motions in civil cases, the purpose of which is to test the legal sufficiency of the underlying case, i.e., whether there is a dispute of material fact, or whether there exists a legal defense that would summarily decide the case. State v. Nunez, 881 So. 2d 658 (Fla. 3d DCA 2004). The purpose of a motion to dismiss is to allow a pretrial determination of the law of the case when the facts are not in dispute. State v. Pasko, 815 So. 2d 680 (Fla. 2d DCA 2002). Indeed, "a trial court cannot grant a motion to dismiss criminal charges even if it concludes the case would not survive a motion for judgment of acquittal." State v. James, 928 So. 2d 1269 (Fla. 2d DCA 2006).

Had this case proceeded to trial, clearly the question of causation would have been an issue that would have been resolved by the jury as it almost certainly would have been a disputed fact. However, such a question would not be properly litigated in a motion to dismiss. Thus, counsel cannot be deemed ineffective for not filing a motion to dismiss. Counsel was not ineffective for failing to file a motion that would have ultimately been denied.

(Attach. 3, Ex. H at 27–32). The First DCA summarily affirmed. (Attach. 4, Ex. N).

The First DCA's summary affirmance is an "adjudication on the merits" of Reese's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

Reese does not dispute any of the state court's factual findings. Accordingly, any claim for relief must be based on whether the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law. The state court's decision was not contrary to clearly established federal law, because the court

Page 25 of 49

utilized the *Strickland* standard. The only remaining question is whether the state court's application of the *Strickland* standard was objectively unreasonable. *See* 28 U.S.C. § 2254(d)(1).

Applying the *Strickland* standard to the facts of this case, fairminded jurists could concur in the state court's conclusion that Reese failed to establish deficient performance and prejudice, because Dr. Minyard's opinion would have precluded dismissal of the charge. *See Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015) (holding that where a petitioner faults his lawyer for failing to pursue a motion prior to entering a plea, both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion); *see also Hill*, 474 U.S. at 59 ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.").

Dr. Minyard concluded that the main cause of Stallworth's death was cardiac arrhythmia due to heart disease, with the stress from Reese's assault constituting a contributing cause. Dr. Minyard testified at deposition:

> [T]he findings in autopsy indicate that he did have heart disease. I've seen people die without any head injuries from these same things. So the heart disease alone could have—would have killed him. In fact, I did say that the main cause of death was the heart disease, but I believe

the temporal relationship with the injury to the head is probably what kind of tipped him over.

(Attach, 3, Ex. H at 102). After additional questioning by defense counsel, Dr. Minyard confirmed her opinion that Stallworth's fatal heart attack was caused by Reese's assault on him. (*Id.* at 103).

Dr. Minyard's findings are strikingly similar to the medical examiner's findings in *Maynard v. State*, 660 So. 2d 293 (Fla. 2d DCA 1995), a case the prosecutor discussed at Reese's sentencing. The court in *Maynard* described:

> The medical examiner testified that the victim had severe heart disease which had developed over a period of many years and was "living on borrowed time." He stated, however, that some people with the victim's condition live for months, even years. He then opined that the cause of death was cardiac arrhythmia due to arteriosclerotic heart disease, with the stress from the altercation constituting a contributing cause. Thus, in his opinion, the altercation caused the victim to suffer a fatal heart attack sooner than he inevitably would have. Significantly, he also related that the interval of time between the altercation and the victim's heart attack was within the time period that such an altercation could cause such an attack in someone who had pre-existing heart disease and was subject to having a heart attack at any time.

> Finally, the medical examiner testified that the victim was not beaten to death by the use of fists. He did note, however, the existence of two injuries on the victim—a scrape on his neck and a bruise to the back of his hand. He described the second wound as being consistent with an attempt to ward off a blow.

*Id.* at 295.

The Second DCA held that there was sufficient evidence to establish a causal connection between the defendant's conduct and the victim's death:

> First, "[c]riminals take their victims as they find them . . . and can not [sic] be excused from guilt and punishment because [the] victim was weak and could not survive the torture . . . administered." *Swan v. State*, 322 So. 2d 485, 487 (Fla. 1975). Second, "[i]n a criminal case expert medical opinion as to cause of death does not need to be stated with reasonable medical certainty. Such testimony is competent if the expert can show that, in his opinion, the occurrence could cause death or that the occurrence might have or probably did cause death." *Delap v. State*, 440 So. 2d 1242, 1253 (Fla.1983), *cert. denied*, 467 U.S. 1264, 104 S. Ct. 3559, 82 L. Ed. 2d 860 (1984). Furthermore, once admitted, the weight to be given such testimony is a matter to be determined by the jury. *Id.*

*Maynard*, 660 So. 2d at 296; *see also Phillips v. State*, 289 So. 2d 447 (Fla. 2d DCA 1974).

Because state law precluded the state court from granting the motion Reese argues his defense counsel should have made—a motion to dismiss under Rule 3.190(c)(4)—Reese cannot show that his counsel was ineffective. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that when the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law."); *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief").

The state court's rejection of Reese's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Reese is not entitled to habeas relief on Ground Two.

<u>**Ground Three**</u>      <u>**"Petitioner assert [sic] that counsel denied him effective assistance of counsel when he [sic] admitted to a factual basis to the court on behalf of Petitioner in order for the court to accept his plea of no contendere when in fact she knew there was no factual basis for such a plea in violation of Petitioner's 5th/6th/ and 14th amendment rights." (Doc. 1 at 4).**</u>

Reese claims that Attorney Cobb was ineffective for conceding that there was a factual basis for his *nolo contendere* plea. Reese alleges that Attorney Cobb "knew that there was no factual basis to the charge of second degree murder when the autopsy report from the medical office clearly stated that the victim died from a heart attack and . . . the wound inflicted was a survival [sic] wound." (Doc. 1 at 4; Doc. 2 at 6–7).

The State concedes that Reese exhausted this claim by presenting it to the state courts in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Reese briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 16 at 29). The State asserts that Reese is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 16 at 30–42).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance

of counsel is the *Strickland* standard set forth above.

### B.    Section 2254 Review of State Court's Decision

Reese presented this claim to the state courts as Ground Two of his Rule 3.850

motion. The state circuit court rejected Reese's claim for these reasons:

<u>Ground Two</u>

The Defendant next asserts that his counsel was ineffective for allowing the Defendant to ple[a]d nolo contendere to second degree murder when there was not a factual basis for such a charge. The record conclusively demonstrates that the Defendant is not entitled to relief on this claim.

A claim that counsel was ineffective for permitting a defendant to plead to a charge that does not have a factual basis may be refuted by the attachment of discovery documents that establish a factual basis actually exists. <u>Harris v. State</u>, 32 So. 3d 197 (Fla. 4th DCA 2010). In this case, there was certainly a factual basis for the Defendant's plea. <u>Attachments 7 and 9</u>. In addition, the Defendant's conviction in this case comports with well-established Florida law. In <u>Phillips v. State</u>, 289 So. 2d 447 (Fla. 2d DCA 1974), the Second District Court of Appeal described the facts of that case as follows:

The evidence reflects that the appellant was under the influence of the hallucinogenic drug LSD during his foray in the Kneelands' apartment. **Mr. Kneeland received no demonstrable physical injuries at the hands of the appellant except a laceration on his nose. Mr. Kneeland was 62 years of age and had a chronic heart condition. The immediate cause of his death was heart failure.** A doctor testified that it was reasonable to assume

that his heart attack was precipitated by the excitement incident to the altercation with the appellant.

Phillips v. State, 289 So. 2d 447,448 (Fla. 2d DCA 1974) (emphasis added).

The Second District Court of Appeal went [on] to hold:

If we were convicted [sic] that the appellant had not committed manslaughter, we would be hard put to refuse to allow him to withdraw his plea. But, we cannot say that the appellant could not have been convicted upon the facts reflected by this record. **The issue of causation would have been a jury question.** Moreover, the appellant's conduct was greater in degree than that of the defendants in Tipton. **He not only pushed and struggled with Mr. Kneeland;** he also knocked his wife down and started choking her. These assaults, coupled with a protracted episode of otherwise bizarre conduct on the part of a total stranger, were bound to have a traumatic effect upon Mr. Kneeland. In fact, appellant's conduct could be said to more nearly resemble that of the defendant in Williamson v. State, 1927, 92 Fla. 1094, 111 So. 245, wherein the Supreme Court affirmed a conviction for second degree murder.

Phillips v. State, 289 So. 2d 447,449 (Fla. 2d DCA 1974) (emphasis added).

Indeed, the Florida Supreme Court's decision in Williamson demonstrates that the Defendant's conviction for second degree murder is supported by the evidence and is legally sound. In that case, the Florida Supreme Court explained:

There is substantial evidence in the record to show that the accused, while under the influence of intoxicating liquor, recklessly drove his car into a fence and there met McCormic. **The accused was about 28 years old and McCormic about 70 years old**; that the accused, without

Page 31 of 49

provocation, cursed the old man and threatened to kill him, and that while so abusing and threatening the old man, he, the accused, started to get out of his car, going toward the old man; that the old man stood his ground and struck the accused with a walking stick; **that the accused took the stick away from the old man and thus, having him disarmed, he struck him viciously on the head**, hit him with his fist, and kicked him in the stomach. While this was going on, McCormic got out his knife and stabbed the accused; that McCormic walked away some distance, and returned, and fell dead; **that death resulted from the blows inflicted by the accused**.

Murder in the second degree is the unlawful killing of a human being, when perpetrated by an act imminently dangerous to another and evincing a depraved mind regardless of human life, **although without a premeditated design to effect the death of any particular individual**. The jury was certainly warranted in finding that the killing was that of a human being and was unlawful; in further finding that it was perpetrated by an act imminently dangerous to the person assaulted and that that act, to wit, **the striking of an old man over the head with a walking stick and kicking him in the stomach, when perpetrated by a man in the bloom of youth and strength, evinced a depraved mind regardless of human life** and even if there was not a premeditated design to effect the death of any particular individual. **This being true, the evidence supported a verdict of murder in the second degree** and thus the first assignment of error, in so far as the same applies to the first to fifth grounds, inclusive, of the motion for a new trial, may be disposed of.

Williamson v. State, 111 So. 245, 248 (Fla. 1926) (emphasis added).

Importantly, in Williamson, Williamson's attorney proffered to the Court that:

Page 32 of 49

At this time I proffer to prove that this witness would testify, if permitted to testify, that Mr. McCormic came to her house and asked her husband what was wrong with him and he told him that it was heart trouble and **Mr. McCormic in turn told him he was suffering from heart trouble himself and that he recommended a certain kind of pills**. I believe it was a certain kind of strychnine for his heart and that he said he was suffering from heart trouble.

Williamson v, State, 111 So. 245, 247 (Fla. 1926) (emphasis added).

Williamson's attorney asked a doctor who testified at the trial:

Doctor, a man could not die immediately that way without heart trouble, could he?

Well, he might get a lick that would kill him, but if he did I imagine that he would die right then. **I do not think that the licks that we found or bruises on the bead were sufficient licks as would produce death, in my opinion, to a man of normal condition.**

Williamson v. State, 111 So. 245, 247 (Fla. 1926) (emphasis added).

Although not binding on this Court, the Court notes the Supreme Court of North Carolina's decision in State v. Luther, 206 S.E. 2d 238 (N.C. 1974). In that decision, the North Carolina Supreme Court, in affirming a second degree murder conviction, held as follows:

The fact that the autopsy revealed hardening of the arteries of the heart and no traumatic injury sufficient to cause death does not exonerate defendant. In his final autopsy report defendant's witness, Dr. Steffee, stated that "the increased cardiac demand occasioned by an altercation might have precipitated death." The law declares "that one who inflicts an injury on another and thereby accelerates his death shall be held criminally responsible therefor."40

Page 33 of 49

Am. Jur. 2d Homicides 16 (1968). See also, 4 Strong, N.C. Index 2d., Homicides 1 (1968).

**Thus, if McKenzie's death came about as a result of the conjunction of his heart disease with either the violence or the excitement and shock of defendant's assault it was still brought about by defendant's unlawful act, for the consequences of which he would be answerable**. Annot., 47 A.L.R. 2d 1072, 1077 (1956). The rule is well settled that the consequences of an assault which is the efficient cause of the death of another are not excused, nor is the criminal responsibility for causing death lessened, by the preexisting physical condition which made the person killed unable to withstand the shock of the assault and without which predisposed condition the blow would not have been fatal.

State v. Luther, 206 S.E. 2d. 238, 241–42 (N.C. 1974) (emphasis added).

Thus, the record conclusively shows that, based on the facts of this case, when the applicable law is applied to those facts, the Defendant's counsel was not ineffective for permitting the Defendant to plead to second degree murder. "Criminals take their victims as they find them. Appellant can not [sic] be excused from guilt and punishment because his victim was weak and could not survive [the attack]." Swan v. State, 322 So. 2d 485,487 (Fla. 1975).

Finally, the Defendant was aware of the medical examiner's findings prior to entering his plea. In his letter to the Court, dated November 11, 2014, the Defendant states "The autopsy report came back stating that the cause of death was arteriosclerotic and hypertensive cardiovascular disease." Attachment 8. Thus, when the Defendant entered his plea on July 13, 2015, he knew the immediate cause of death was the victim's heart disease. Of course, Dr. Minyard's deposition demonstrates that she also was of the opinion the victim's death was a homicide. The Defendant cannot go behind the plea and raise issues that were known when he entered the plea. Gidney v. State, 925 So. 2d 1076 (Fla. 4th DCA 2006).

(Attach. 3, Ex. H at 32–35). The First DCA summarily affirmed. (Attach. 4, Ex. N).

The First DCA's summary affirmance is an "adjudication on the merits" of Reese's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

This court must defer to the state court's factual findings, because they are amply supported by the record and because Reese has not rebutted them with clear and convincing evidence to the contrary. The "AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing 28 U.S.C. § 2254(e)).

Based on the state court's findings, fairminded jurists could concur in the court's conclusion that counsel was not ineffective for conceding that there was a factual basis for Reese's plea to Second Degree Murder, because: (1) the facts contained in the probable cause affidavit, Dr. Minyard's report, and Dr. Minyard's deposition testimony were sufficient to establish the elements of Second Degree

Murder, including causation; and (2) Reese himself stipulated to the facts in the probable cause affidavit, and agreed that there were sufficient to justify his plea of *nolo contendere* to Second Degree Murder.[7]

The state court's rejection of Reese's claim was not contrary to, and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Reese is not entitled to habeas relief on Ground Three.

> **Ground Four**       **"The trial court erred when it failed or neglected to accept Petitioner [sic] plea as outlined in Rules of Criminal Procedure 3.172 and counsel was ineffective for not objecting to the improper procedures which denied Petitioner his due process of law in violation of his 14th/5th and 6th amendment [sic] rights of the United States Constitution and article 1, § 9, of the Florida Constitution." (Doc. 1 at 4).**

---

[7] In Florida, the elements of Second Degree Murder are (1) the victim is dead; (2) the death was caused by the defendant's criminal act; and (3) there was an unlawful killing of the victim by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life. Fla. Standard Jury Instructions in Crim. Cases 7.4 Murder—Second Degree; Fla. Stat. § 782.04(2). Although not required by statute, case law and the relevant jury instructions define an act as "imminently dangerous" and evincing a "depraved mind," if it is an act that: "(1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; and (2) is done from ill will, hatred, spite or evil intent; and (3) is of such a nature that the act itself indicates an indifference to human life." *Thompson v. State*, 257 So. 3d 573, 579 (Fla. 1st DCA 2018) (quoting *Wiley v. State*, 60 So. 3d 588, 591 (Fla. 4th DCA 2011)).

Reese claims that the trial court deprived him of due process when it accepted his plea without complying with the procedural requirements of Rule 3.172 of the Florida Rules of Criminal Procedure. (Doc. 1 at 4–5; Doc. 2 at 8). Reese contends that the trial court's "improper acceptance" of his plea renders the plea involuntary. (*Id.*). Reese also claims that defense counsel was ineffective for failing to object to the inadequate plea colloquy. (Doc. 1 at 4–5; Doc. 2 at 8).

The State asserts that Reese's claim of trial court error is procedurally defaulted, and that Reese's ineffective assistance claim is without merit. (Doc. 16 at 44-55).

### A.    Sub-Claim One: Trial Court's Failure to Comply with Florida Rule of Criminal Procedure 3.172

The State asserts a procedural default defense to this claim based on the state postconviction court's interpretation of Reese's claim as one of "judicial error" that "could have and should have been raised on direct appeal." (Doc. 16 at 43–47; s*ee also* Attach. 3, Ex. H at 35 (state postconviction court's order)). One could argue that the state court's imposition of a procedural bar was not adequate to support its judgment, because Rule 3.850 expressly authorizes claims for relief from judgment on a guilty or *nolo contendere* plea, on the ground that "the plea was involuntary." Fla. R. Crim. P. 3.850(a)(5). Reese's claim could be construed liberally as challenging the voluntariness of his plea. Regardless, this court need not decide the

procedural default issue, because Reese's challenge to the voluntariness of his plea fails even on *de novo* review. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Reese claims that the trial court's colloquy failed to conform to the procedural requirements of Florida Rule 3.172, and that the court's "improper acceptance" of his plea renders it involuntary. (Doc. 1 at 4–5). Reese's supporting allegations, however, fail to identify any constitutional infirmity in his plea proceeding. (*Id*.). Reese's supporting memorandum explains that Florida Rule 3.172 outlines ten factors the court must address on the record, but Reese fails to identify any relevant factor that the trial court failed to address. (Doc. 2 at 8). Reese likewise fails to explain how any shortcoming in the colloquy affected the knowing or voluntary nature of his plea. Reese's reply appears to claim that the trial judge violated Rule 3.172(a) by accepting the parties' stipulation that there was a factual basis for his plea, without making an independent determination that the factual basis was sufficient. (Doc. 20 at 12-16).[8]

---

[8] Although it is doubtful that a petitioner can wait until his memorandum in opposition to the State's response to fully present his claim, *cf. Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (refusing to consider arguments presented for the first time in a reply brief), the undersigned assumes without deciding that Reese did not waive this aspect of his claim by failing to present it in his habeas petition. *See Preston*, 785 F.3d at 456 n.5 ("Although we think it dubious that a petitioner can

As a preliminary matter, Reese's conclusory assertion that the trial court violated Fla. R. Crim. P. 3.172, standing alone, does not establish a federal due process violation and does not warrant federal habeas relief. The Eleventh Circuit has held:

> States are free to adopt procedural rules requiring a factual basis as Florida has done in Rule 3.172(a). The federal Constitution, however, does not mandate them to do so, and a violation of such state procedural rules does not of itself raise constitutional questions reviewable by federal habeas courts.

*Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983). A federal habeas court may set aside a state court guilty plea only for failure to satisfy due process. *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991).

The Due Process Clause requires that a guilty plea be "voluntary" and "intelligent." *Alford*, 400 U.S. at 31. The latter requirement is met when a defendant "receives real notice of the true nature of the charge against him" prior to entering a plea. *Bousley v. United States*, 523 U.S. 614, 618 (1998). A defendant has such notice "when he has been informed of both the nature of the charge to which he is pleading guilty and its elements." *Gaddy v. Linahan*, 780 F.2d 935, 943 (11th Cir. 1986) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)). "In addition,

---

wait until his memorandum in opposition to the state's response to fully present his federal claims, . . . we assume without deciding that Preston did not waive his claim by failing to present it as a matter of federal due process in his federal habeas petition.").

the defendant should understand how his conduct satisfies those elements." *Id*. at 944.

"[T]he due process clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere that is not accompanied by a claim of innocence." *Wallace*, 695 F.2d at 548. When a guilty or *nolo contendere* plea is accompanied by a claim of innocence, the Constitution allows a court to accept the plea provided it has a factual basis. *See Alford*, 400 U.S. at 38 ("In view of the strong factual basis for the plea demonstrated by the State and [the defendant's] clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it."). The Eleventh Circuit explained in *Wallace*:

> [T]he purpose of placing the facts on the record is not to establish guilt as a basis for a judgment of conviction. Rather it is to aid in the constitutionally required determination that the defendant entered the plea intelligently and voluntarily. A factual basis demonstrates a defendant's recognition—despite his denial of guilt—that the evidence negates his claim of innocence, he has nothing to gain by a trial, and much to gain by pleading guilty.

695 F.2d at 548 (citing *Willett v. Georgia*, 608 F.2d 538, 540 (5th Cir. 1979), and *Alford*, 400 U.S. at 37–38).

"[D]ispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Recognizing that a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty

plea," courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony. *Id.*

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73–74 (citations omitted). "The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place." *Premo*, 562 U.S. at 132.

The record in this case demonstrates that Reese fully understood the nature of the second degree murder charge, including the facts the State intended to prove to the jury. Reese certified in writing, and confirmed verbally under oath, that he read and understood the charges in the Information; that he understood the elements of each charge; that he was aware that the maximum penalty under Florida law was life in prison; and that he understood that entering the negotiated *nolo contendere* plea meant that he would be sentenced to no more than 30 years of imprisonment. (Doc. 16, Attach. 1, Ex. A at 32, 63–66).

Concerning the factual basis, the record demonstrates that Reese fully understood how his conduct satisfied the elements of Second Degree Murder. The Information clearly set out the elements of Second Degree Murder and the exact manner in which Reese committed the offense. The probable cause affidavit described in even greater detail the facts underlying the charges. The Information and probable cause affidavit were part of the record before the trial judge at the plea hearing. Reese stipulated to the facts contained in the probable cause affidavit, and his plea agreement incorporated by reference the probable cause affidavit as the factual basis for his plea. Reese certified, by signing the plea agreement, that he reviewed the facts with his attorney, and that he agreed and stipulated there were sufficient facts available to the State to justify his plea of *nolo contendere* to Second Degree Murder. (*Id*. at 64). Reese also certified that he had reviewed the discovery materials with defense counsel; that she had performed sufficient pre-trial work on the case to provide him adequate advice; and that he was satisfied with counsel's representation and advice. (*Id*. at 35, 64, 66). The trial court accepted Reese's plea based on the stipulated facts contained in the probable cause affidavit. The facts in the probable cause affidavit satisfy the elements of Second Degree Murder.

The record also demonstrates that prior to entering his plea, Reese was aware of the medical examiner's findings. In his letter to the trial court dated November 11, 2014, a copy of which is part of the record, Reese stated, "The autopsy report

came back stating that the cause of death was arteriosclerotic and hypertensive cardiovascular disease." (Attach. 3, Ex. H at 114–15). What Reese declined to mention was that the autopsy report also stated that the victim's death was a homicide, because the victim's heart attack was precipitated by Reese's assaulting him. This demonstrates that when Reese entered his plea on July 13, 2015, he knew that the evidence showed a causal link between his conduct and the victim's death.

In sum, Reese understood he was pleading *nolo contendere* to Second Degree Murder, the elements of which were satisfied by the facts stated in the probable cause affidavit, the son's identification of Reese from a photo line-up, the fingerprint evidence, and the medical examiner's opinion, all of which Reese was aware prior to entering his plea. Reese has not shown that his plea was unknowing or involuntary. Reese is not entitled to habeas relief on the due process claim asserted in Ground Four.

### B. Sub-Claim Two: Ineffective Assistance of Trial Counsel

The parties agree that Reese presented his sub-claim of ineffective assistance of counsel to the state courts in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Reese briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 5; Doc. 16 at 47). The State asserts that Reese is not entitled

to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 16 at 47–55).

### 1.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard set forth above.

### 2.    Section 2254 Review of State Court's Decision

Reese presented this claim to the state courts as Ground Three of his Rule 3.850 motion. The state circuit court rejected Reese's claim for these reasons:

<u>Ground Three—Claim of Ineffective Assistance of Counsel</u>

Finally, the Defendant alleges that his counsel was ineffective for failing to object to the Court allegedly failing to comply with rule 3.172. This claim is conclusively refuted by the record.

Although rule 3.172(c), requires a trial judge to verbally engage a defendant who seeks to enter a plea, nothing in the rule prevents a court from using preprinted forms to assist in imparting the information required by the rule. Forms can boost the efficiency of a busy trial court by shortening the time required for a plea conference.
***
For this reason, a judge using a preprinted rights form as a part of a plea colloquy must orally verify that the defendant has intelligently consumed the written information contained within it.

<u>Hen Lin Lu v. State</u>, 683 So. 2d 1110, 1111–12 (Fla. 4th DCA 1996).

Before accepting the pleas, the court confirmed with each defendant that he had read the plea and understood it, and the court offered each defendant an opportunity to ask

> questions. Each defendant said he had read the plea, understood it, and had no questions. The present pleas, we conclude, were knowing and intelligent under <u>Ashley</u>. Indeed, it would be difficult to give a defendant a clearer picture of his or her sentencing possibilities.

<u>State v. Blackwell</u>, 661 So. 2d 282, 284 (Fla. 1995).

> Similarly, the Court utilized a pre-printed rights form as part of the Defendant's plea colloquy. <u>Attachment 2</u>. The Defendant swore under oath that he had read the form, signed it and that he understood the rights he was waiving by doing so. <u>Attachment 3</u>. The Defendant's counsel testified, when asked if she went over all of the rights the Defendant was waiving, answered, "I went over every single right, and then I made him read the whole thing to himself as well" <u>Attachment 5</u>, at 19. Defendant's counsel testified that the Defendant did not express any confusion or apprehension regarding the plea on the day of the plea. <u>Id.</u>, at 21. Defendant's counsel had no cause to object based on a purported violation of rule 3.172, Florida Rules of Criminal Procedure.

(Attach. 3, Ex. H at 36). The First DCA summarily affirmed. (Attach. 4, Ex. N).

The First DCA's summary affirmance is an "adjudication on the merits" of Reese's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

To the extent Reese argues that the trial court's inquiry failed to comply with Florida Rule 3.172(c), Reese's ineffective assistance claim turns on an issue of state

law. This court defers to the state court's determination that Rule 3.172(c) is satisfied if a trial court uses a preprinted rights form as a part of a plea colloquy and orally verifies that the defendant has intelligently consumed the written information contained within it. The state court record confirms that the trial court did exactly that during Reese's colloquy. *See Callahan, supra.*

The record also confirms that the trial court expressly asked Reese whether he understood that he was giving up the applicable constitutional rights enumerated in Rule 3.172(c) (the right to a trial, the right to remain silent, the right to have a jury decide his case, the right to confront witnesses, and the right to appeal), and Reese responded "yes."[9] The trial court also confirmed that there was a factual basis for the plea and that Reese stipulated to those facts. The state postconviction court reasonably concluded that Reese failed to show that his defense counsel performed deficiently by "standing silent" when the trial court conducted the colloquy. With respect to Reese's contention that defense counsel performed deficiently by stipulating that there was a factual basis for his *nolo contendere* plea to Second

---

[9] The "Right to Representation" enumerated in Rule 3.172(c)(2) did not apply, because Petitioner was represented by counsel. Also, the "Deportation Consequences," "Sexually Violent or Sexually Motivated Offenses," and "Driver License Suspension or Revocation" provisions of Rule 3.172(c)(8), (9), and (10) did not apply to Petitioner's case.

Degree Murder, the state court reasonably rejected that aspect of his claim for the reasons discussed in Ground Three, *supra*.

For all of the foregoing reasons, Reese is not entitled to habeas relief on Ground Four.

## IV.    Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S.

at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge by filing an objection to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Marcus Ferrell Toler, a/k/a Marcus Ferrell Reese*, Escambia County Circuit Court Case No. 2014-CF-960, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of the court close this case.

At Panama City, Florida, this 2nd day of June, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**